## APPEAL OF CENTRAL AMUSEMENT CO.

Docket No. 2418.    Submitted May 20, 1925.    Decided October 16, 1925.

*Paul S. Ragan, C. P. A.*, for the taxpayer.
*P. S. Crewe, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits tax for the year 1920 in the amount of $4,199.21. The taxpayer claims affiliation during the first six months of 1920 with the Alhambra Realty Co.

### FINDINGS OF FACT.

The taxpayer is an Indiana corporation with its principal office in Indianapolis. On January 1, 1920, it owned and operated a number of motion-picture and vaudeville theatres in Indianapolis, among which was the Alhambra Theatre, located upon real estate which the taxpayer held under the terms of a 13-year lease, dated March 1, 1917.

On January 21, 1920, the Alhambra Realty Co. was organized for the purpose of acquiring title to a portion of the real estate upon which the Alhambra Theatre was located. The capital of the Alhambra Realty Co. consisted of 1,250 shares of preferred stock of the par value of $100 each and 320 shares of voting common stock of the par value of $100 each. This stock was all subscribed for in cash at par on January 21, 1920.

The preferred stock was sold to the public through the Meyer-Kiser Bank of Indianapolis. The common stock was issued to the following officers and directors of the Central Amusement Co.: C. M. Olson, E. G. Sourbier, Martin Hugg, and Jean Marks, officials and directors of the Central Amusement Co., received 80 shares each of the common stock and held in equal proportions, namely, 25 per cent.

At this time the capital stock of the Central Amusement Co. consisted of 1,000 shares of voting common stock of a par value of $50 per share, held as follows:

| | Number of shares. | Percentage of holdings. | | Number of shares. | Percentage of holdings. |
|---|---|---|---|---|---|
| C. M. Olson | 498 | 49.8 | J. H. Gavin | 51 | 5.1 |
| E .G. Sourbier | 251 | 25.1 | Jessie M. Barton | 10 | 1.0 |
| Martin Hugg | 140 | 14.0 | Jean Marks | 50 | 5.0 |

The entire proceeds of the capital-stock issue of the Alhambra Realty Co., less necessary organization expenses, were used in acquir-

ing title to the real estate above mentioned. Under the terms of the preferred-stock issue, the Central Amusement Co. guaranteed the payment of dividends on the preferred stock and pledged itself to redeem not less than 10 per cent of this stock each year. It was further provided that no dividend should be paid on the common stock of the Alhambra Realty Co. until the entire issue of preferred stock had been retired.

It was the original intention to issue the common stock of the Alhambra Realty Co. to the Central Amusement Co., but, owing to the fact that a suit for damages against the Central Amusement Co. was pending at the date of the organization, it was deemed advisable to issue this stock to the individual directors. This suit was settled in the latter part of June, 1920, and on July 1, 1920, all of the stock of the Alhambra Realty Co. was transferred to the taxpayer. It is conceded by the Commissioner that the two corporations were affiliated after July 1, 1920.

The manner in which the taxpayer acquired the stock of the Alhambra Realty Co. is set forth in minutes of the taxpayer company dated June 30, 1920, the material portion of which reads as follows:

Whereas the Alhambra Realty Company was created by Max Flaskamp, Edward C. Sourbier, Jean Marks and Martin M. Hugg, stockholders of this company, for the purpose of protecting this company and its interest by purchasing of the owners the following described real estate in the City of Indianapolis, Indiana, now held under lease by this company and constituting the east fifteen (15) feet of the Alhambra Theatre, to wit:

The west half of the west half of lot numbered six (6) in Square fifty-five (55), in the City of Indianapolis, the same being fifteen (15) feet off the entire west side of the said lot six (6) ; and,

Whereas interests inimical to those of the Central Amusement Company were desirous and would have purchased said real estate or the interests in the same which were for sale, if the same had not been purchased by said Alhambra Realty Company, and said Alhambra Realty Company only acquired said real estate after considerable difficulty and then only by reason of the fact that it had contracted for some interests in said real estate which would have enabled it to enforce partition by sale ; and,

Whereas the Central Amusement Company was at the time not in a financial condition to purchase said real estate or finance the purchase of the same and if said real estate had been purchased by others it in all likelihood would have resulted in this company being required to vacate said real estate upon the expiration of its lease and restore the premises to their former condition as required by the terms of said lease, and would have left it with only so much of the real estate covered by the Alhambra Theatre as it holds under its lease with Fred C. Dickson and thereby resulted in incalculable damage to this company ; and,

Whereas said real estate was worth more than said Alhambra Realty Company paid for the same and it has since increased in value ; and,

Whereas said Alhambra Realty Company was incorporated for one hundred thousand ($100,000.00) dollars common and for one hundred and twenty-five thousand ($125,000.00) preferred stock ; and,

Whereas said Alhambra Realty Company sold its entire issue of preferred stock to the Meyer-Kiser Bank of the City of Indianapolis, Indiana, for par, redeemable in installments of twelve thousand five hundred ($12,500.00) dollars on the 1st days of January, in the years, 1921, 1922, 1923, 1924, 1925, 1926, 1927, 1928, 1929, and 1930; and,

Whereas the stock is payable with dividends thereon at the rate of six per cent. per annum, payable in quarterly installments of one and one-half per cent. on the 1st days of January, April, July and October of each year upon the preferred stock then unredeemed; and,

Whereas there was issued to said Max Flaskamp, Edward G. Sourbier, Jean Marks and Martin M. Hugg, each eighty shares of common stock of said company fully paid up and non-assessable, and they are now the absolute owners of said number of shares of said common stock, and the same represents an actual investment by them in cash equal to the par value of their said stock; and,

Whereas, said Max Flaskamp, Edward G. Sourbier, Jean Marks, and Martin M. Hugg, have proposed and are willing to sell their said stock in said Alhambra Realty Company to this company for forty thousand ($40,000.00) dollars, with the agreement on the part of the this company that it will pay the dividends on said preferred stock as they become payable and redeem the several installments of preferred stock as they are required to be redeemed by the terms of the certificates of preferred stock of said company.

Now, therefore, be it resolved by the Central Amusement Company that it accept the proposition of said Max Flaskamp, Edward G. Sourbier, Jean Marks and Martin M. Hugg, and purchase of them all their said shares of common stock of said Alhambra Realty Company for the sum of Forty thousand ($40,000.00) dollars, and that this company assume the payment of all said preferred stock and dividends payable thereon in accordance with the terms and agreements set out in the certificates of preferred stock issued by said Alhambra Realty Company, and that the Board of Directors of this company be and it is hereby ordered and directed to purchase of said Flaskamp, Sourbier, Marks and Hugg all said three hundred and twenty shares of common stock of said Alhambra Realty Company owned by them for said sum of forty thousand ($40,000.00) dollars.     *     *     *

From and after January 21, 1920, substantially all the stock of the taxpayer and the Alhambra Realty Co. was owned or controlled by the same interests.

DECISION.

The deficiency determined by the Commissioner is disallowed.

ARUNDELL not participating.